# THE STATE OF NEW HAMPSHIRE

# SUPREME COURT

**In Case No. 2015-0279, <u>Brian J. Goodman v. Wells Fargo Bank, N.A., as Trustee</u>, the court on May 26, 2016, issued the following order:**

Having considered the briefs of the parties and the record submitted on appeal, the court concludes that a formal written opinion is unnecessary in this case. The plaintiff, Brian J. Goodman, appeals the dismissal by the Superior Court (<u>McNamara</u>, J.) of his action against the defendant, Wells Fargo Bank, N.A. (Wells Fargo) as Trustee for Option One Mortgage Loan Trust 2006-1 Asset-Backed Certificates, Series 2006-1. We affirm.

At issue is investment property that the plaintiff formerly owned in Bow. In August 2005, the plaintiff executed an adjustable rate note in favor of 1-800-East-West Mortgage Company, Inc. (East-West) in the amount of $245,000. That note was endorsed by East-West to Option One Mortgage Corporation (Option One).

The note was secured by a mortgage on the plaintiff's Bow property. The mortgage granted Mortgage Electronic Registration Systems, Inc. (MERS), as nominee for East-West and East-West's successors and assigns, the power of sale and the right to foreclose upon the Bow property. In September 2005, MERS, as nominee for East-West, assigned the mortgage to Option One.

Pursuant to a January 20, 2006 Mortgage Loan and Purchase Agreement, Option One conveyed both the note and the mortgage to Option One Mortgage Acceptance Corporation. Pursuant to a "Pooling and Servicing Agreement" (PSA), the Option One Mortgage Loan Trust 2006-1 Asset-Backed Certificates, Series 2006-1 (Trust), was created by and between Option One Mortgage Acceptance Corporation as the "'Depositor,'" Option One as the "'Master Servicer,'" and Wells Fargo as the "'Trustee.'" (Capitalization omitted.) Under the PSA, the Depositor assigned the note and mortgage to the Trustee (Wells Fargo).

The plaintiff defaulted on the note and mortgage; his last payment on the note and mortgage was in January 2009. In October 2009, the plaintiff was notified that his property was to be sold at a foreclosure sale on November 9, 2009. On November 6, 2009, he brought an <u>ex parte</u> petition to enjoin the sale, alleging that he was in the process of applying for a short sale, that there were tenants in the home who would be homeless if the foreclosure were to proceed, and that, if the injunction were to be granted, he could complete the

short sale. The court granted the plaintiff's ex parte petition and enjoined the foreclosure for 90 days (until February 4, 2010).

On February 9, 2010, the plaintiff brought another ex parte petition to enjoin the foreclosure sale. However, he later requested that the court deem that petition to be withdrawn, and, on February 18, 2010, the court granted his request.

The foreclosure sale took place in May 2010. Wells Fargo purchased the property at the foreclosure sale. Thereafter, the court ordered the plaintiff to file an amended petition setting forth all his allegations.

The plaintiff filed his amended petition in May 2011, alleging, for the first time, that Wells Fargo lacked title to the subject premises because: (1) the assignment of the mortgage from MERS to Option One was "fraudulent"; (2) the assignment of the mortgage from Option One to Wells Fargo was not signed by the Option One corporate officers whose names appear on it (the "robo-signing" claim); (3) the assignment of the mortgage from Option One to Wells Fargo stated that the assignment became effective September 21, 2009, but was "signed allegedly on" September 29, 2009; (4) the "documents which purport to give mortgage rights to Wells Fargo . . . and its predecessor Option One are false, knowingly fabricated and/or incorrect"; and (5) MERS had no authority to transfer the note/mortgage and, thus, the assignment of the mortgage from MERS to Option One "irretrievably destroyed the clear chain of title." The plaintiff purported to state claims for wrongful foreclosure, fraud, unjust enrichment, and "[u]nclean hands" based upon these new allegations.

In March 2015, Wells Fargo moved for partial dismissal of the plaintiff's claims on the ground that they were barred by RSA 479:25, II (2013) (amended 2015). RSA 479:25, II provides, in pertinent part, that a plaintiff's failure to institute an action to enjoin a scheduled foreclosure sale "prior to sale shall thereafter bar any action or right of action of the mortgagor based on the validity of the foreclosure." We have held that RSA 479:25, II "bars any action based on facts which the mortgagor knew or should have known soon enough to reasonably permit the filing of a petition prior to the sale." Murphy v. Financial Development Corp., 126 N.H. 536, 540 (1985).

The trial court granted Wells Fargo's motion with respect to the plaintiff's claims for wrongful foreclosure, unjust enrichment, and "[u]nclean hands." The court found that RSA 479:25, II barred those claims because they were based upon facts in the public record and, therefore, were based upon facts that the plaintiff "knew or should have known" before the May 2010 foreclosure sale. However, the trial court ruled that the plaintiff's fraud claim survived Wells Fargo's motion for partial dismissal.

Before trial, the trial court granted Wells Fargo's motion in limine to exclude evidence "related to any alleged breaches of the provisions of the documents concerning the formation and operation of the [Trust] in which [the plaintiff's] mortgage is pooled and for which Wells Fargo serves as [T]rustee." In his brief, the plaintiff states that he waives any claim related to that decision. See Pike v. Deutsche Bank Nat'l Trust Co., 168 N.H. 40, 43-45 (2015) (holding that the petitioner lacked standing to challenge assignment of mortgage on the ground that the assignment did not comply with the PSA); see also Woodstock Soapstone Co. v. Carleton, 133 N.H. 809, 817 (1991) (explaining that if an "assignment is effective to pass legal title, [a] debtor cannot interpose defects or objections which merely render [an] assignment voidable at the election of the assignor or those standing in his shoes" (quotation and emphases omitted)).

The plaintiff's fraud claim went to trial. However, after the parties delivered their opening statements to the jury, the trial court granted Wells Fargo's renewed motion to dismiss the plaintiff's fraud claim on the ground that he had failed to plead, with particularity, any fraud committed by Wells Fargo. See Jay Edwards, Inc. v. Baker, 130 N.H. 41, 46-47 (1987) (ruling that "to withstand a motion to dismiss, the plaintiff must specify the essential details of the fraud, and specifically allege the facts of the defendant's fraudulent actions" and that "[i]t is not sufficient for the plaintiff merely to allege fraud in general terms" (quotations omitted)). This appeal followed.

On appeal, the plaintiff argues that the trial court erred by: (1) precluding him from proving the truth of his allegations that the assignments were fraudulently created; (2) ruling that Wells Fargo had met its prima facie burden of proving that it held the note and mortgage at the time of the foreclosure by filing the note and mortgage with the court; (3) determining that his non-fraud claims were time-barred; (4) granting Wells Fargo's partial motion to dismiss on the eve of trial; and (5) limiting his damages to those that he claimed "in response to interrogatory or other discovery requests by the date of the Final Pretrial Conference."

As the appealing party, the plaintiff has the burden of demonstrating reversible error. Gallo v. Traina, 166 N.H. 737, 740 (2014). Based upon our review of the trial court's rulings, the plaintiff's challenges to them, the relevant law, and the record submitted on appeal, we conclude that the plaintiff has not demonstrated reversible error. See id.

Affirmed.

DALIANIS, C.J., and HICKS, LYNN, and BASSETT, JJ., concurred.

**Eileen Fox,
Clerk**